No. 27,277.

GABRIEL FRANK, *Appellant,* v. THE UNION NATIONAL BANK, *Appellee.*

SYLLABUS BY THE COURT.

1. BANKS AND BANKING—*Payment—Conversion of Proceeds of Checks—Evidence.* In an action to recover for the alleged conversion of the proceeds of certain checks, the evidence considered and held sufficient to support the general verdict and special findings of the jury.

2. SAME—*Generally.* Various alleged errors relating to (*a*) the overruling of a motion to strike out parts of defendant's answer, (*b*) the allowance of amendments to defendant's answer, (*c*) the introduction of evidence, (*d*) the refusal to give certain instructions, considered and held not to require a reversal.

Appeal from Sedgwick district court, division No. 4; ISAAC N. WILLIAMS, judge. Opinion filed May 7, 1927. Affirmed.

*K. W. Pringle* and *G. Austin Brown,* both of Wichita, for the appellant.

*C. H. Brooks, Willard Brooks* and *Howard T. Fleeson,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover for the alleged conversion of the proceeds of certain checks. The defendant prevailed and plaintiff appeals.

The facts are substantially these:

The plaintiff was engaged in the cattle business and was a banker, oil operator and large landowner in Morris county. A. J. Fisher was an oil driller without substantial capital. He was indebted for a string of drilling tools. The two became interested together in drilling what was known as the Chase well near plaintiff's landholdings in Morris county. Certain funds belonging to plaintiff were involved in litigation in Oklahoma in an action in which Fisher was a party. On his recommendation, the plaintiff employed George Gardner, a lawyer of Wichita, to represent the plaintiff in such litigation to collect such funds. In the meantime it was necessary to make other arrangements to carry on other drilling operations by plaintiff and Fisher. Gardner advised organization of a corporation and in consequence thereof the Imperial Drilling Company was

Appeal and Error, 4 C. J. pp. 941 n. 50, 943 n. 81, 970 n. 57, 1048 n. 76. Banks and Banking, 7 C. J. p. 757 n. 53.

formed. Fisher owned a majority of the stock and some was held by Gardner. The company was without funds and was financed by plaintiff. Fisher was president and manager and Gardner was secretary. The company took over the drilling tools and casing that had been owned by Fisher. In order to secure plaintiff for funds advanced, he took a chattel mortgage from the drilling company for $16,000 or $18,000. After consultation with plaintiff, Fisher investigated the oil situation in Greenwood county and began drilling what was known as the Hollis well.

Gardner made collection of the funds in Oklahoma, three checks being made to the order of the plaintiff, one for $3,750, and two others for $813.33 each—the checks in controversy. When received, Gardner indorsed the plaintiff's name upon them and deposited them to the account of the Imperial Drilling Company with the defendant bank. The proceeds of such checks were thereafter checked out by Gardner to pay the obligations of the Imperial Drilling Company largely in drilling the Hollis well.

The plaintiff contends that Gardner had no authority to indorse his name upon the checks, and that the use of the proceeds was entirely unauthorized. He contends that Gardner was attorney for the bank; that the bank knew his signature; that to allow him to so deposit and use plaintiff's funds amounted to a conversion thereof by the bank, and that the bank was an intermeddler chargeable with the diversion of plaintiff's funds. Fisher, having largely handled the transactions involved, was one of the principal witnesses. Among other things, he testified:

"After the completion of the Chase well, I spoke to Mr. Frank about my plan for the future because some of the equipment belonged to him. We considered it so because he paid for it. This was material used in the Chase well. He told me at this time that if I could obtain a good likely looking prospective deal that would meet with his approval, that he would agree to undertake the project with me. I thereupon went to Wichita and found that I could get several deals and returned to Council Grove and showed Mr. Frank the geological survey of the deals and discussed the deals with him more or less thoroughly. We decided on the Hollis deal in Greenwood county. Some time, possibly two weeks, after our first conference regarding the Hollis deal I returned to Mr. Frank's ranch house and the matter was again discussed. We (Mr. Frank and I) had about 240 acres which I had acquired around the proposed Hollis well, title being taken in the name of the Imperial Drilling Company. This company had been organized some months previously but did not start to function until we undertook the Hollis well. The casing and equipment used at the Chase well were turned over to the Im-

perial Drilling Company and Mr. Frank was given back a mortgage and note for $16,000 or $18,000. This was shortly after the spudding in of the Hollis well. We acquired the acreage about a week or ten days after our first decision to go into the Hollis deal. I told Mr. Frank that while the Imperial Drilling Company now had this equipment, it had no ready cash with which to function. Mr. Frank told me to start moving in the material and continue to draw drafts on the Council Grove Bank, the same as I had done with the Chase well. Profits were to be divided between Frank and the Imperial Drilling Company. The company drilled no other well in Greenwood county. George Gardner was at that time secretary of the Imperial Drilling Company and was authorized to draw drafts or checks for that company."

He further testified that some $1,800 deposited with the defendant bank was used in the expenses of the collection at Tulsa, including attorneys' fees to Gardner and others, and that he reported to plaintiff concerning the collections between the first and the tenth of May of that year. Referring to a check for $1,000 signed by Gardner on the Union National Bank, he testified that the money was to pay obligations at the Hollis well. Continuing:

"I went to one of the bankers in Eureka and deposited with them a draft for $1,000 and had them wire Mr. Gardner, or the Union National Bank, at Wichita. In the meantime, I phoned to Mr. Gardner and acquainted him with the conditions and informed him that I was drawing this draft, and to instruct the Union National Bank to wire payment to the bank at Eureka, which bank thereupon attended to the obligations mentioned. These were for rig building, casing crew and trucking and labor expenses on the Hollis well. . . .

"Q. Did you make any use of Mr. Frank's credit in making purchases or contracting for labor or supplies for that well? A. I drew, as near·as I can remember, possibly $2,500 worth of drafts on him to cover the expense of the Hollis well, as Mr. Frank guaranteed the Imperial Drilling Company account with the Oil Well Supply Company and the National Supply Company. . . .

"Some time the latter part of April I told Mr. Frank that the Imperial Drilling Company needed some cash to operate with, and he told me that he had no ready cash to advance us at that time, but, in the event that I was successful in getting this money loose at Tulsa, that I could go ahead and use it. We finally succeeded in obtaining this money and used it in accordance with Mr. Frank's instructions. . . He told me that he had no ready cash, but for me to devote whatever time was necessary to secure the release of this money due us in Tulsa, and that we could use whatever we realized therefrom. . . . After the trial, we drove from Stillwater to Guthrie and Mr. Frank told me to go to Tulsa and make collection of this money and do whatever was necessary to collect it and the Imperial Drilling Company could have the use of those funds in order to function. . . . Mr. Frank told me over the telephone that he could not raise any other money and that I would have to get the money released in Tulsa in order for the company to get it. . . .

"Q. Did you give Mr. Gardner any instructions about these checks? A. Yes, sir.

"Q. What were they? A. I instructed Mr. Gardner to deposit them to the account of the Imperial Drilling Company in the Union National Bank. I stated that they were to be used for the payment of the accounts owed by the Imperial Drilling Company. Some time in May, 1924, I was at Mr. Frank's ranch and I told him that due to bad weather and moving equipment, we had incurred more expenses on the Hollis well than we had anticipated and we still lacked about $500 or $600 in payment of all the bills due at that time. He said he would try to raise money in the next few days. Mr. Frank asked me what we had done with the Stillwater money and I showed him the accounts we owed, and we were not able to pay all the accounts because we received about $1,000 less than we had hoped to collect, and he made no objection to me depositing the money in Wichita."

Referring to the trial in Oklahoma and an automobile trip with the plaintiff and Fisher, Mr. Gardner testified:

"On this automobile trip, Fisher told Mr. Frank that the bills on the Hollis well had to be paid and he wanted to get some money. Mr. Frank said, 'Well, if you get this money released, won't that relieve you, and will not that be enough?' Fisher said, 'It will, but I don't know whether we can get it soon enough.' Mr. Frank said, 'We will come out some way; if I cannot get the money at Council Grove, why, you can take that money when it is released.'"

Further evidence need not be detailed. The case was fully tried to a jury, which returned a general verdict for the defendant and answered special questions as follows:

"1. Did the plaintiff, either in person or by agent, orally give Gardner reasonably to understand that the disposition made of the checks in question was authorized? Yes.

"2. Did Frank, by word or conduct, after the deposit of the checks, and knowing thereof, express to Gardner or Fisher his approval thereof? Yes.

"3. Were the proceeds of the checks checked out in payment of obligations of Frank, or of claims which were prior liens against the property covered by his $20,000 mortgage? Yes; obligations of Frank.

"4. If you should find that not all of the proceeds were so checked out in payment of obligations of Frank, or prior liens against the property covered by his $20,000 mortgage, state how much, if any, was checked out. All used.

"5. Was Gardner the authorized attorney in handling the interplea or intervention of Frank in the lawsuit at Stillwater, Okla.? Yes."

The case was one of fact. The evidence was ample in every respect to sustain the special findings, which are conclusive on the controverted issues. There was substantial testimony to support the theory that the drilling operations were carried on by Fisher and the Imperial Drilling Company with the full knowledge and assent of the plaintiff; that he authorized and ratified the handling of funds in the manner that they were handled, and that the defendant re-

ceived no benefit from the transactions. Various questions are raised; that the court erred in refusing to strike out certain parts of defendant's answer; in permitting amendments to be made thereto; in the admission of evidence; in the instructions. All have been considered but no error appears which would warrant a reversal.

The judgment is affirmed.